FT. WORTH BELT RY. CO. v. JONES et al.*
(No. 8283.)

(Court of Civil Appeals of Texas.    Ft. Worth. Jan. 8, 1916.    Rehearing Denied Feb. 12, 1916.)

1. APPEAL AND ERROR ⚖══301 — REVIEW — WAIVER OF ERROR.

Under Rev. St. 1911, art. 1612, constituting the motion for new trial the assignments of error, an objection to the submission of a special issue whether the "cut of cars" upon which deceased and his fellow switchman were at work was engaged in moving or handling in-

---

terstate commerce is waived, where it is not continued in the motion for new trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1743, 1753–1755; Dec. Dig. ☞301.]

2. APPEAL AND ERROR ☞1073 — REVIEW — HARMLESS ERROR.

That in form the recovery in an action for causing death is in the name of the executrix, as authorized by the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1913, §§ 8657–8665]), instead of the surviving wife, children, and parents of deceased, as required by the state statute, is not material where the verdict and judgment specify the particular amounts to which the wife, children, and surviving parent are entitled; both statutes requiring the action to be brought for the benefit of the same persons.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4240–4247; Dec. Dig. ☞1073.]

3. MASTER AND SERVANT ☞276, 278—INJURIES TO SERVANT—ACTIONS—EVIDENCE.

In an action for causing death of a servant, evidence *held* insufficient to show negligence of the employing railroad in permitting excavations near the railroad track by a third party, or failing to keep a watchman at the point, or that such negligence, if any, was the proximate cause of the injury to deceased.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–952, 954, 956–972, 976, 977; Dec. Dig. ☞276, 278.]

4. MASTER AND SERVANT ☞279—INJURIES TO SERVANT—ACTIONS—EVIDENCE.

In an action for causing the death of a railroad employé, evidence *held* to authorize the jury to find that the stop signal, which resulted in the fall of deceased, was given by his fellow servant, and not by deceased himself.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 973–975, 978–980; Dec. Dig. ☞279.]

5. LIMITATION OF ACTIONS ☞127—COMPUTATION OF PERIOD—AMENDMENT OF PLEADING.

Amendment of the complaint for causing the death of an employé by the intervention of the administratrix and allegation of a cause of action under the federal Employers' Liability Act more than two years after the death of deceased does not show a new cause of action barred by section 6, which provides that no action shall be maintained under the act unless commenced within two years from the accrual of the cause of action.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 543–547; Dec. Dig. ☞127.]

6. LIMITATION OF ACTIONS ☞127—COMPUTATION OF PERIOD—AMENDMENT OF PLEADING.

The amendment of a complaint for causing the death of a railroad employé by alleging as an additional ground of recovery the negligence of a fellow servant based upon Rev. St. 1911, art. 6640, providing that every person operating a railroad shall be liable for damages sustained by an employé by reason of the negligence of a fellow employé, while the original cause was based solely on articles 4694, 4695, which, in effect, provide that death will not abate an action for personal injuries, does not state a new cause of action so as to bar recovery thereon under the two-year statute of limitations (Rev. St. 1911, art. 5687, par. 7).

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 543–547; Dec. Dig. ☞127.]

Appeal from District Court, Tarrant County; Marvin H. Brown, Judge.

Action by Helen Jones and others against the Ft. Worth Belt Railway Company. From a judgment for plaintiffs, defendant appeals. Affirmed. See, also, 166 S. W. 1130.

Lassiter, Harrison & Rowland and Slay & Simon, all of Ft. Worth, for appellant. McLean & Scott and Carlock & Carlock, all of Ft. Worth, for appellees.

CONNER, C. J. This suit was instituted in the district court on the 21st day of May, 1910, by the widow, children, and mother of Frank Jones against the Ft. Worth Belt Railway Company, seeking to recover damages in the sum of $50,000 on account of the death of said Frank Jones on March 2, 1910, while working as a switchman for the defendant company. The fatal accident occurred while the switching crew was handling a long string of cars. The engine was pushing the cars ahead of it, and Jones and another switchman were riding on top of the car farthest from the engine. Jones and the man with him discovered a piece of iron pipe lying across one of the rails a short distance in advance of the train, and, fearing that the pipe would derail the cars, Jones arose from a sitting position and started to go down the ladder on the forward end of the forward car, with the evident purpose of removing the pipe before the train reached it. At or about the time, however, that he started down the ladder, Jones, or his fellow switchman, signaled to the engineer, who in obedience to the signal applied the emergency brakes, with the result that Jones was thrown forward to the ground, and before he could arise the train resumed its onward motion and ran over him and killed him.

The grounds of negligence alleged in the original petition were that the defendant company had permitted its track to become so obstructed with piles of dirt and iron pipe that the place of the accident was unsafe, and that it negligently failed to have the engine equipped with the proper brakes.

The defendant railway company pleaded the general denial, pleas of assumed risk and of contributory negligence, and impleaded Armour & Co., alleging that that company was engaged in the work of excavation near the track at the place of the accident, and that, if the pipe got on the track through the negligence of any one, such negligence was primarily that of the employés of Armour & Co., and the prayer was that, if the defendant railway company should be held liable on account of the presence of the pipe on the track, it be permitted to recover over against Armour & Co.

On November 7, 1910, the plaintiffs filed an amended petition, alleging substantially as before, except that the allegation of negligence in a failure to have the engine equipped with the proper brakes was abandoned, and it was added that the engineer was neg-

ligent in suddenly and violently stopping the train. It was also alleged that the defendant was guilty of negligence in failing to have a watchman at the place. On the day of this amendment the case was first tried, and resulted in a directed verdict in favor of Armour & Co. as against the cross-action asserted by the railway company, and in a verdict for the plaintiffs against the railway company for damages in the sum of $10,863. The only issue of negligence submitted to the jury on that trial was whether or not the iron pipe referred to got on the rail through the negligence of the defendant railway company. On appeal to this court it was held by us that the evidence failed to support the issue of negligence on the part of the defendant railway company in obstructing its track with the iron pipe as submitted by the trial court, and, the Supreme Court having answered on certificate from us that the directed verdict in favor of Armour & Co. was correct (see Ft. Worth Belt Ry. Co. v. Jones [Sup.] 166 S. W. 1130), the case was remanded for a new trial as between the defendant railway company and the plaintiffs only.

Thereafter, on February 8, 1915, the plaintiffs filed an amended petition in which, after alleging negligence on the part of the defendant, as before, in permitting the obstruction of the railway track, they for the first time further alleged that Swope, the fellow switchman who was with deceased at the time, was negligent in giving the engineer the signal to stop, which, having been obeyed, resulted as before stated. The defendant, pleading as before, also alleged that the deceased and Swope were engaged in interstate commerce at the time, whereupon Helen Jones filed a plea of intervention as administratrix of the estate of the deceased, and prayed that she might be permitted to recover in that capacity in event it was found that the plaintiffs' right of recovery rested upon the federal act regulating the liability of railroads for injuries to employés while engaged in interstate commerce. See Fed. Stat. Ann. Supp. 1909, bottom page 584 et seq.

The case was submitted upon numerous special issues, all of which were determined in favor of the plaintiffs, and judgment in the sum of $12,000 was awarded to Mrs. Helen Jones, as administratrix, for the benefit of herself and the deceased's mother and children; the verdict and judgment specifying the particular amounts to which each was entitled. The defendant railway company has appealed.

[1] We will first briefly dispose of several questions about which we think there can be but little, if any, controversy. A number of questions are presented by the assignments which relate to the issue of defendant's plea that the deceased was engaged in interstate commerce at the time of his death. The jury found in answer to a special issue that the "cut of cars," referring to those upon which the deceased and his fellow switchman were at work, was not at the time engaged in "moving" or "handling" interstate commerce. The submission of this issue was objected to, among other things, and the verdict of the jury thereon is attacked on the ground that the undisputed evidence shows that the parties were employed in interstate commerce at the time of the accident in question. We will not review the evidence relating to the subject; for, if in any view the issue can be said to be material, we find that the appellant's motion for new trial failed to continue the objection to the submission of the issue, and also wholly failed to question the finding of the jury thereon. So that, in view of the statute constituting the motion for new trial the assignments of error (R. S. art. 1612), it must be held that the previous objections have been waived, and that, as between the parties herein, the finding against appellant on the issue is conclusive. See Revised Statutes, art. 1986; Weinstein v. Acme Laundry, 166 S. W. 126.

[2] The fact that in form the recovery in this case was in the name of the executrix, as authorized and required by the federal Employers' Liability Act, instead of in the name of the surviving wife, children, and parent of the deceased, as required under our statute, can be of no material moment in view of the fact that the verdict and judgment in this case specifies the particular amounts to which the wife, children, and surviving parent were entitled, both statutes alike requiring the action to be brought for the benefit of the persons named, with exception now unnecessary to notice.

[3] As alleged and shown in the testimony, employés of Armour & Co. had been engaged in some excavations near the track and about the place where the iron pipe was found upon the track, and one of the hotly contested issues was whether the defendant railway company was guilty of negligence proximately causing the injury under consideration in permitting the dirt from the excavations to be so piled near the track as to afford an opportunity for an iron pipe to fall thereon and roll down upon the track, and whether, under the circumstances, it was the duty of the appellant to have a watchman at the place in question to see that the track was kept clear. Appellant has presented numerous assignments relating to these issues and to the jury's findings thereon. We will not incumber our opinion with the recitation of all of the evidence relating to the subject, which is substantially set out in the opinion of the Supreme Court hereinbefore referred to. 166 S. W. 1130. That court held that the evidence was insufficient to establish negligence proximately causing the injury on the part of Armour & Co., and we fail to see how it can be said

that there was negligence on the part of the railway company in permitting the excavations, or in failing to have a watchman at the particular place, and the evidence is particularly wanting in sufficiency to establish that, if there was negligence in these particulars, such negligence could have been the proximate cause of the injury. The evidence fails to show that the dirt was piled upon the track, or that the presence of the piles of dirt near the track had anything to do with the accident, except possibly, as insisted upon by the appellees, that its formation was such as to enable an iron pipe, such as the one in question, to roll from the top down upon the track. The evidence shows that this same switching crew had passed up and down the track but a short time before, some 20 or 30 minutes perhaps; that the track at that time was unobstructed; at least there is nothing in the evidence indicating an obstruction at that time, and there is no evidence indicating that a train had passed loaded with iron pipe from which the pipe in question could have fallen upon the dirt, and from thence down upon the track; nor is there any evidence that the employés of Armour & Co. were displacing iron pipe in the excavations they were making. In short, the evidence is wholly silent as to how, when, or by whom the iron pipe was placed upon the track. It is a mere supposition to say that it rolled from the embankment, or that it was placed there negligently or otherwise by any employé of the defendant company, or that, had a watchman been appointed generally for the purpose of keeping the track clear, the pipe got upon the track at such time and under such circumstances as that he could or ought, in the exercise of ordinary care, to have seen it or removed it in time. So that, we think that if, by any reasonable construction of the evidence, it could be said that the defendant company was guilty of negligence in the respects mentioned, it wholly fails to show that therefrom an obstruction or an injury such as under consideration could have been anticipated by the defendant company, and hence that such negligence, if any, could have operated as a proximate cause of the result. T. & P. Ry. Co. v. Bigham, 90 Tex. 226, 38 S. W. 162; Ft. Worth Belt Ry. Co. v. Jones (Sup.) 166 S. W. 1130. These conclusions, of course, must result in upholding appellant's assignments and contentions relating to the issues of negligence in permitting the piles of dirt and in failing to have a watchman, and we are thus brought to the only remaining issue upon which the verdict and judgment can rest, to wit, the issue of Swope's negligence in giving the signal to the engineer to stop the train, and we will now address ourselves to that subject.

[4] There was a sharp conflict in the evidence as to whether the stop signal was given by the deceased or by his fellow switchman, Swope. The engineer and several other witnesses testified that the signal was first given by Jones, the deceased, and later repeated by Swope. There was another witness, however, whose testimony seems to be direct, to the effect that Jones did not give the signal, and that Swope did. The jury found in answer to special issues that Swope gave the signal instead of Jones, that it was negligence under the circumstances to do so, and that such negligence was the proximate cause of the injury. Without displaying the evidence relating to this subject, we content ourselves with saying that the evidence has been carefully considered, and, while it may seem to preponderate in favor of the contention that Jones himself gave the signal instead of Swope, yet the jury were the exclusive judges of the credibility of the witnesses who testified and of the weight to be given to their testimony, and we cannot say that they were unauthorized or unsupported in the conclusions reached by them in appellee's favor.

[5] A further contention of appellant is that the cause of action predicated upon Swope's act in giving the stop signal was barred by limitation: First, because the case was one arising under the federal Employers' Liability Act, and the intervention of the temporary administratrix introduced a new cause of action more than two years after the death of the deceased, and which, hence, was barred by section 6 of the federal statute, which reads: "No action shall be maintained under this act unless commenced within two years from the day the cause of action accrued." See Fed. Stat. Ann. Supp. 1909, p. 585. And, second, that the cause of action based upon negligence on the part of Swope in giving a stop signal was a new one under either state or federal statute, and, not having been set up until February 8, 1915, more than two years after the cause of action accrued, the plaintiffs' right of recovery upon that ground of negligence was barred by limitation, regardless of whether the case was controlled by the federal or state law. The state law on the subject also provides that actions for injury done to the person of another where death ensues from such injury shall be commenced within two years after the cause of action shall have accrued, it being considered in such cases that the cause of action accrues at the death of the party injured. Revised Statutes, art. 5687, par. 7.

Even if we should disregard the jury's finding hereinbefore discussed to the effect that this case does not arise under the federal law, and should further adopt the appellant's contention that the undisputed evidence shows that at the time of the occurrence in question Jones was employed in interstate commerce, yet we think the contention first made is conclusively settled by the cases of R. v. Wulf, 226 U. S. 570, 33

Sup. Ct. 135, 57 L. Ed. 355, Ann. Cas. 1914B, 134; Railway v. Casey, 172 S. W. 734; Love v. Southern Ry., by the Supreme Court of Tennessee, 108 Tenn. 104, 65 S. W. 475, 55 L. R. A. 471; Railway v. Goode, 163 Ky. 60, 173 S. W. 330. In the Wulf Case the action was brought by the sole surviving party in her individual capacity to recover damages from an interstate railway carrier for the death of her unmarried, childless son, while engaged in its employ in interstate commerce. After more than two years after the institution of the suit she amended, and, without setting up any new facts as the ground of action, for the first time set up and sought to recover under her appointment as the personal representative of the deceased, in which capacity alone her action under the Employers' Liability Act could be maintained. It was distinctly held that the amendment was not equivalent to the commencement of a new action for the purpose of applying the two-year limitation prescribed by the federal statute. We have not found that this decision has been modified or qualified in the respect under consideration by any other case. Indeed, the other cases that we have cited, and so far as we have been able to ascertain, follow the case of Railway v. Wulf.

[6] The remaining contention, however, presents greater difficulty. We have a statute (Revised Statutes, art. 4694) which gives a right of action against a railroad company (among others) where the death of any person is caused by the negligence or carelessness of its servants or agents; but the next article (4695) provides that:

"The wrongful act, negligence, carelessness, unskillfulness, or default, mentioned in the preceding article, must be of such a character as would, if death had not ensued, have entitled the party injured to maintain an action for such injury."

By the common law a right of action for personal injuries proximately caused by the negligence of another was given, but the right did not survive to the personal representatives or heirs of the deceased in case of death, so that, construing the two articles of the statute together, their principal effect apparently is merely to declare that death will not abate the action, leaving the right of the party at last dependent, to a very material extent, upon the common-law principles governing such cases. Hence it was that this court held that under these articles of the statute there could be no recovery for an injury resulting in death where the negligence of the deceased proximately contributed thereto; such being a principle of common law. See Stephenville, N. & S. Ry. Co. v. Voss, 159 S. W. 64. It is likewise true, under the common law, that an employé, as a part of his contract of employment, assumes the risk resulting from the negligence of a coemployé. So that this suit, as originally instituted, was made by

the pleadings to depend, in part at least, upon common-law principles, that is to say, upon the negligence of the master in failing to provide a safe place for the deceased to work, in failing to see that the railway track was safe and free from obstructions, and in failing to supply the engine with proper brakes; all of which were duties that the railway company could not delegate to another, and for a violation of which, when established, the company was responsible under common-law principles. But the right of action in the case before us for the negligence of Swope in giving the stop signal rests upon a somewhat different foundation. If the case is properly to be regarded as one arising under the federal Employers' Liability Act, then the right of recovery is dependent upon the terms of that act, which provides (section 1) that every common carrier by railroad while engaged in commerce between any of the several states shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce which results, in whole or in part, from the negligence of any of the officers, agents, or employés of such carrier, etc. If, on the other hand, the case is to be disposed of, as we think it must be under the findings of the jury, on the theory that the deceased was not employed in interstate commerce at the time of his death, then the right of action of the plaintiff in this suit based upon the negligence of Swope must depend upon article 6640 of our Revised Statutes, which reads:

"Every person, receiver, or corporation operating a railroad or a street railway, the line of which shall be situated in whole or in part in this state, shall be liable for all damages sustained by any servant or employé thereof while engaged in the work of operating the cars, locomotives or trains of such person, receiver, or corporation, by reason of the negligence of any other servant or employé of such person, receiver or corporation, and the fact that such servants or employés were fellow servants with each other shall not impair or destroy such liability."

It is with very much force, therefore, that appellant contends that the cause of action based upon the allegations of Swope's negligence was a new one presented for the first time after the period at which, under our statute, it was barred by limitation. True, we have a statute permitting amendments of pleadings, which it will be found has been very liberally construed by our courts, and when allowed the amendment relates back to the original institution of the suit, but such amendments have not been allowed so as to cut off a defendant's right to a plea of limitation in cases where it is held that the amendment sets up a new cause of action. Eagle Pass Lumber Co. v. G., H. & S. A. Ry., 164 S. W. 402; S. A. & A. P. Ry. Co. v. Bracht, 157 S. W. 269; Phœnix Lumber Co. v. Houston Water Co., 59 S. W. 552. So, too, it is said in 25 Cyc. p. 1308:

"An amendment which introduces a new or different cause of action and makes a new or different demand does not relate back to the beginning of the action, so as to stop the running of the statute of limitations, but is the equivalent of a fresh suit upon a new cause of action, and the statute continues to run until the amendment is filed; and this rule applies, although the two causes of action arise out of the same transaction, and where by the practice of the states a plaintiff is only required in his pleading to state the fact which constitute his cause of action."

Was, therefore, Swope's negligence a new cause of action so as to be barred? The cases last above cited seem at least to strongly tend to show that it was, and this view is strongly supported by the case of Union Pacific Ry. v. Wyler, by the Supreme Court of the United States, 158 U. S. 285, 15 Sup. Ct. 877, 39 L. Ed. 983. In the case last mentioned it appeared that, as the action was originally instituted, the case was based upon the common and general laws governing the relation of master and servant, but that later, by an amendment filed after the period of limitation there involved, a statute was invoked which, as in the case of our own, made the employers operating a railroad liable to one servant for the negligence of another, which statute, it was stated, was in derogation of the common law. The court held that the question of limitation was to be determined by an ascertainment of whether the amended petition presented a new cause of action, and it was said that the latter question must be solved by an application of the principles which belong to the law of departure. Numerous citations are then given which illustrate the test applied. Thus it was said, quoting from 1 Chitty on Pleading, 674:

"A departure may be either in the substance of the action or defense, or the law on which it is founded; as if a declaration be founded on the common law, and the replication attempted to maintain it by a special custom, or act of Parliament."

Quoting from Stephen on Pleading, pp. 412, 414:

"These, it will be observed, are cases in which the party deserts the ground, in point of fact, that he had first taken. But it is also a departure, if he puts the same facts on a new ground in point of law; as if he relies on the effect of the common law in his declarations, and on a custom in his replication, or on the effect of the common law in his plea, and a statute in his rejoinder."

Quoting from Gould on Pleading, pp. 423, 424, it is said:

"When the matter first alleged as the ground of action or defense is pleaded as at common law, any subsequent pleading by the same party supporting a particular custom is a departure."

Other authorities of like tenor were cited, and it was held that the amendment under consideration set up a new cause of action, and was hence barred under the plea of limitation there presented.

We confess to some difficulty in avoiding the force and logic of these authorities, and, except for the decision of one of our own courts in the case of G., H. & S. A. Ry. v. Perry, reported in 38 Tex. Civ. App. 81, 85 S. W. 62, we would be inclined to apply them in the case before us. In the Perry Case, as presented in original petition filed May 1, 1900, the plaintiffs sought to recover for Perry's death on the ground of the defendant's negligence in permitting the presence of a piece of board upon the railway track against which a hand car upon which Perry was riding at the time was projected. Later, by an amendment on September 3, 1903, more than two years after the original petition had been filed, plaintiff filed an amended petition alleging the same accident as resulting from the same act of negligence formerly alleged, and also upon the negligence of the servants of the defendant on the car in failing to observe an order to stop. The cause was submitted alone upon the ground of negligence last named, and which was for the first time set up in the amended petition. The court, however, in disposing of the question of limitation presented, held that the amendment did not present a new or different cause of action. It was said:

"The purpose of the original petition was to recover of defendant damages sustained by plaintiffs from the death of Perry in the particular accident, through the negligence of the defendant, alleging the negligence to be in a particular respect. It would be immaterial in any case what form the negligence took, so long as it was negligence of defendant causing the injury complained of. Hence it cannot be said that any particular form of negligence is an essential element of the cause of action, nor that a change of allegations as to negligence really affects the cause of action"—citing Mexican C. Ry. Co. v. Mitten, 13 Tex. Civ. App. 653, 36 S. W. 282; S. P. Ry. Co. v. Wellington, 36 S. W. 1114; Sherman Oil & Cotton Co. v. Stewart, 17 Tex. Civ. App. 59, 42 S. W. 241.

The judgment for the plaintiffs so predicated was affirmed, and a writ of error was refused by our Supreme Court, as will be seen by reference to page xvii of 38 Tex. Civ. App. While it seems to us that the cases cited in support of the Perry Case are distinguishable from it, we fail to see how in passing upon the petition for a writ of error our Supreme Court could have avoided a consideration and determination of the question of limitation there presented, and, not feeling able to distinguish the Perry Case from the one now before us, we feel constrained to hold that the amendment here under consideration did not present a new cause of action so as to make appellant's plea of limitation on that ground available. In aid of this conclusion it may not be amiss to also observe that in all the petitions in this case the same state of facts was substantially presented, except that in the last amendment an appeal was made to a statute not therefore necessary to a recovery. The cause of action, however, as presented in the original and first amended petitions, was materially dependent upon our general statute providing liability in cases of injury re-

sulting in death, as found in title 70, art. 4694 et seq. The amended petition presented substantially the same facts, save that Swope's negligence was alleged, to which Chapter 14 of the Revised Statutes applied, including article 6640, which we have already quoted in full, and which in express terms renders the master liable for the negligence of a fellow servant. In the liabilities imposed in the two chapters we see but little, if any, material difference; the difference principally being that in chapter 14 recovery may be had, under circumstances such as obtain in this case, for the negligence of fellow servants. So that, in the petition before us, as also in the Perry Case, it may be said that the changes asserted in the different petitions are not, strictly speaking, from law to law, that is, from the general or common law to a statute, but, instead, from one statute to another, both appeals to the law being the same, save that in the last statute invoked a defense was cut off that would have been available under the first.

What we have said, we think, disposes of the important questions presented on this appeal. There are some other complaints, such as of the argument of counsel for appellee, and of alleged misconduct on the part of the jury, but, after a careful examination of the circumstances relating to these questions, we conclude that no reversible error is presented in these respects.

Having, for the reasons given, upheld the jury's finding on the issue of Swope's negligence, we conclude that the judgment must be affirmed.