LEE et al. v. CLAY ROBINSON & CO. et al.*
(No. 8356.)

(Court of Civil Appeals of Texas. Ft. Worth. April 8, 1916. On Motion for Rehearing, May 13, 1916.)

1. CHATTEL MORTGAGES ⬅⮞243 — RELEASE—CONSIDERATION.

Where the representative of the mortgagee of cattle agreed to a sale and resale of a portion of the cattle, and to a release of the mortgage if a stated portion of the proceeds of a sale in the market by the second buyer was turned over to the mortgagee, a payment of earnest money to the mortgagor by the first buyer, without the knowledge and not for the benefit of the mortgagee, was not consideration for the release, since to constitute consideration the money must have been paid to or for the mortgagee at or before the time of the agreement to release the mortgage.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 508; Dec. Dig. ⬅⮞243.]

2. CHATTEL MORTGAGES ⬅⮞282 — TRIAL—FINDINGS INCONSISTENT WITH VERDICT.

In an action to foreclose a chattel mortgage, an erroneous finding that the consideration for an alleged release of the mortgage was a previous payment of earnest money to the mortgagor under an agreement of sale, necessarily excluded a conclusion that there was other consideration, and the specific finding limiting and controlling the general rendered the general finding that there was consideration a mere legal conclusion, which it was the duty of the court to reject.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 568; Dec. Dig. ⬅⮞282.]

3. APPEAL AND ERROR ⬅⮞719(7) — REVIEW—ASSIGNMENT OF ERROR—NECESSITY.

In an action to foreclose a chattel mortgage, there being no assignment of error preserving the defendants' objection to the court's action, in submitting an issue of a consideration for an alleged release of a mortgage, in soliciting the jury's answer to the question, "What was the consideration?" it cannot be reviewed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2975, 3490; Dec. Dig. ⬅⮞719(7).]

4. APPEAL AND ERROR ⬅⮞173(12)—REVIEW — FAILURE TO REQUEST FINDING.

In an action to foreclose a chattel mortgage, there being no plea presented or request for a finding that the defendants acted upon the agreement of the plaintiff's agent to release the mortgage upon the payment of a portion of the proceeds of a sale in the market in such a way as to make it inequitable for the plaintiff to insist upon full payment of the mortgage, the question will not be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1109, 1113; Dec. Dig. ⬅⮞173(12); Limitation of Actions, Cent. Dig. § 737.]

5. APPEAL AND ERROR ⬅⮞832(1)—REHEARING—INACCURACY IN ORIGINAL CONCLUSION.

Where a suit to foreclose a chattel mortgage on cattle was instituted before the cattle were paid for, though not until the day after the sale, an inaccuracy in the original conclusion on appeal stating that it was instituted shortly before the sale was immaterial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3215–3228; Dec. Dig. ⬅⮞832(1).]

Appeal from District Court, Tarrant County; J. W. Swayne, Judge.

Action by Clay Robinson & Co. and others against W. H. Lee and others. Judgment for the plaintiffs, and defendants appeal. Affirmed.

Baskin, Dodge, Baskin & Eastus, and James C. Wilson, all of Ft. Worth, for appellants. Capps, Cantey, Hanger & Short and A. B. Curtis, all of Ft. Worth, for appellees.

CONNER, C. J. So far as it is necessary to state, this suit was filed by Clay Robinson & Co., a Texas corporation, against W. E. Barrow, W. S. Barrow, Lee Brothers, a partnership composed of W. H. and John Lee, Geo.

F. Loving, and W. W. Barron. The suit was for recovery upon two promissory notes executed by W. E. Barrow for the sum of $16,-176.47 and $1,602.82, respectively, maturing June 1, 1914, and to foreclose a mortgage lien given to secure said notes, on certain cattle described in the mortgage and in the plaintiff's petition. Plaintiff also prayed for an injunction and for the appointment of a receiver. The legal controversy arose out of the following state of facts:

The execution of the notes and mortgage as alleged is not controverted; the mortgage covered about 700 head of steer cattle located in Stonewall and Nolan counties, and there appears to be no dispute but that the mortgage was properly registered. It appears that of the mortgaged cattle some 160 head had been sold prior to the controversy in the present case, and the proceeds applied to the plaintiff's indebtedness reducing it to the sum of $12,567.86. Therefore, in June, 1914, W. S. Barrow, a son of W. E. Barrow, and acting for him, sold 276 head of the mortgaged cattle to the defendants W. H. and John Lee, for the sum of $40 per head, with an agreed cut back of 10 per cent., for which the Lees were to pay $37.50. At the time of this sale one of the Lees paid to W. S. Barrow the sum of $150 as earnest money to be applied as part of the purchase money when the cattle were delivered. A little later and before delivery, said Lees in turn sold the cattle to Geo. F. Loving and W. W. Barron, who then and there paid to the Lees $500 as earnest money, which also was later to be applied as part of the purchase price. These parties agreed to give $42 per head for the cattle. Thereafter, W. S. Barrow, continuing to act for his father, W. E. Barrow, assisted by the Lees, gathered the 276 head of cattle involved in this controversy, and they were driven to the delivering point where W. S. Barrow delivered them to the Lees, and the Lees in turn delivered them to Loving and Barron, all consisting, substantially, but a single transaction in the way of delivery. It appears that some time after the sales to the Lees and to Loving and Barron mentioned, and before delivery of the cattle, it was discovered that the plaintiff in this suit, Clay Robinson & Co., held the mortgage hereinbefore mentioned, and about the time of the delivery one De Forrest, acting for and in the interest of the plaintiff company, appeared and at the times of the delivery, as shown by the jury's findings, it was agreed that the cattle might be shipped by Loving and Barron and sold in the Ft. Worth market, and that if out of the proceeds of such sale at Ft. Worth, the $40 per head and the $37.-50 per head for the "cut back," agreed by the Lees to be paid for the cattle, should be turned over to the plaintiff, that then the plaintiff company would release its mortgage. The shipment, accordingly, took place as contemplated, and the cattle were sold on the Ft. Worth market.

It appears, however, that shortly before the sale of the cattle on the Ft. Worth market, the plaintiff company instituted its suit and secured the appointment of a receiver, to whom was paid the entire proceeds arising out of the final sale mentioned, and that of such proceeds the receiver paid to the plaintiff company the sum of $10,820, thus reducing the plaintiff's debt at the time of the trial, principal, interest, and attorney's fees, to the sum of $3,422.55. There seems to be no question made of any of these proceedings. The real contest arises over the question of whether such payment by the receiver in accordance with the agreement made by De Forrest should, as between the parties, satisfy the plaintiff's mortgage, thus leaving the balance of the proceeds in the hands of the receiver available to the Lees and to Loving and Barron. The case was submitted upon special issues, and upon the jury's answers thereto both plaintiff and the defendants moved the court for judgment. The court granted the prayer of plaintiff's motion, entering an appropriation judgment in its favor, and the defendants have appealed.

We deem it unnecessary to set out at length the issues submitted and the jury's findings thereon. We think it sufficient to say that the findings are such as to have required the judgment as prayed for by the defendants, unless the jury's finding on the first issue justifies the action of the court in rendering judgment as it did. By said first issue the jury were requested to find "if there was any consideration to release the cattle described in the pleadings, and, if so, what was such consideration?" To which the jury answered, "Yes; $150 earnest money given by Lee to Barrow." The pleadings presented the issue, and no attack is made thereon, save as to its legal effect. Appellees' insistence is that the agreement to release the mortgage as pleaded by the defendants was without consideration, and hence inoperative, and that the payment of the $150 as earnest money by Lee to W. S. Barrow, as recited in the jury's findings, was no such consideration as would support the release. Appellants insist, however, that the court should not have submitted the question of what constituted the consideration, if any, and that, hence, that part of the findings specifying that the consideration for the agreement to release was the $150 earnest money given by Lee to Barrow should be rejected or disregarded, and the whole finding construed merely as a finding that there was a consideration for the agreement to release.

[1-3] We are of the opinion that appellees' contention, as above stated, must be sustained, and that all assignments of error attacking the action of the court in rendering a judgment for Clay Robinson & Co. upon the verdict as returned must be overruled. That before the appellee company would be bound by the terms of De Forrest's agreement to release the mortgage, it must appear that a

good and sufficient consideration therefor was shown, cannot be disputed under the authorities. Indeed, appellants make no such contention, and it seems to us evident that the jury's finding that there was a consideration amounts to no more under the circumstances than a mere finding or conclusion of law on the jury's part. There is no finding that the $150 paid by Lee to W. S. Barrow was ever paid to or received by the plaintiff company. Indeed, it is undisputed in the evidence that it was not so received by the plaintiff company. The $150 so paid W. S. Barrow was paid before the Lees, or Loving, or Barron had knowledge of the mortgage in question, and we fail to see how it can be said that this payment to W. S. Barrow could in any way operate as a consideration moving to Clay Robinson & Co. The finding of the jury of the specific consideration in its nature excludes an inference that there was any other consideration, and appellants have suggested no sufficient consideration that could have, or did exist. There was no plea on the part of the defendants in the action that by reason of the De Forrest agreement to release, they did, or failed to do, anything that they otherwise would not have done, and that, therefore, Clay Robinson & Co. were estopped from repudiating the agreement by De Forrest. Nor do we find any assignment of error to the action of the court in soliciting the jury's answer to the question of "What was the consideration?" The action of the court in so submitting the issue must therefore be held under well-settled rules to have been approved. So that, on the whole, as stated, we think the court committed no error in rendering judgment for the plaintiff company upon the special findings of the jury considered as a whole.

What we have said we think sufficiently disposes of the case, and it is accordingly ordered that all assignments of error be overruled, and the judgment affirmed.

### On Motion for Rehearing.

Appellants with great insistence urge that we erred in our original conclusions. It is earnestly contended that we are in conflict with the cases holding to the effect that the verdict alone must constitute the basis of the judgment, to wit, with the following cases: Scott v. Farmers' & Merchants' National Bank, 66 S. W. 493; Crawford v. Wellington Railroad Committee, 174 S. W. 1008; Weinstein v. Acme Laundry, 166 S. W. 126; Fant v. Sullivan, 152 S. W. 515. But not so, as we think. We did not resort to the evidence for the purpose of determining that there was no consideration in fact for the agreement of appellee's agent to release its mortgage upon payment of a less sum than was due. This was the conclusion we drew from the special finding itself. The finding was that there was consideration, but that it was the "$150 earnest money given by Lee to Barrow." It thus appears that the verdict on its face shows that $150 was paid to Barrow, and not to or for appellee, and that it was paid as earnest money on a purchase of cattle, and not as a consideration for the agreement made by De Forrest. We considered the undisputed evidence that such payment was made before De Forrest appeared upon the scene of action as supporting, and not for the purpose of destroying or avoiding, the plain reading of the verdict. That there may have been some subsequent negotiations, as is now called to our attention, by another agent of appellee, to the effect that appellee in an indirect way should receive credit for this $150, cannot alter the effect of the verdict and the undisputed facts. To constitute a consideration the money must have been paid to or for appellee at or before the time of the agreement to release the mortgage. Otherwise the agreement was a nudum pactum. See 9 Cyc. 358, par. 14; 1 Elliott on Contracts, §§ 195, 204, 208. The specific finding of what the consideration was necessarily excluded a conclusion that there was some other consideration than that stated in the verdict, and rendered the general finding of the consideration as recited in the verdict a mere legal conclusion that it was our duty to reject; it being thought that the specific finding both limited and controlled the general. So, it is thus seen, in our original conclusion we endeavored to follow and not to depart from the rule announced in the cases hereinbefore referred to.

But it is further contended that the special finding of that which constituted the consideration should be wholly disregarded, and thus give effect to the general finding on that subject, but we know of no authority for our doing so. Appellant at the time of the return of the verdict made no exception to its form, or, if so, no assignment of error has been presented which calls upon us to review the action of the court in receiving it as written. On the contrary, appellant, apparently at least, accepted the verdict and moved the court below for a judgment upon it as it stood, and it is to the failure to do this that error was assigned before this court. It is true, as appellants now urgently contend, that they objected to the form of the issue when it was presented by the court to the jury, then contending, as now, that it was improper to call for a finding as to the nature of the consideration. But while the record shows that such objection was made, the objection was not preserved by an assignment of error so that we can review the action of the trial court in this particular.

[4] Our attention has also been called to circumstances appearing in the evidence which might, under proper allegations, have constituted a sufficient basis for a finding that appellants, in the shipment of the cattle, acted upon De Forrest's agreement to release the mortgage in such way and under such circumstances as to make it inequitable on appellee's part to thereafter insist upon

full payment of its mortgage. But, as pointed out in our original conclusions, no plea to this effect was presented, nor was there any request below for a finding on such issue, so that we fail to see how we can now give effect to the circumstances referred to.

[5] Our attention has also been called to an inaccuracy of statement in our original conclusions. We there, among other things, said that this suit was instituted "shortly before the sale of the cattle in question on the Ft. Worth market." This was a mistaken inference on our part, for that the record, as is now for the first time pointed out, shows that the suit was instituted on the day following the sale of the cattle on the Ft. Worth market. The inaccuracy, however, we regard as wholly immaterial, for it is undisputed in the record that, while the suit was instituted after the sale of the cattle, it was so instituted before the cattle were paid for, and the proceeds of the sale were collected by the receiver appointed by the court and by the receiver paid over in the manner and amount as stated in our original conclusions.

On the whole we conclude, after a consideration of the very able and insistent argument by counsel for appellants, that the motion for rehearing must be overruled; and it is so ordered.